1

1                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
2                   FORT WORTH DIVISION

3  UNITED STATES OF AMERICA     .  CRIMINAL ACTION NO.
                        .  4:09-CR-172-A
4  V.                    .
                        .
5  NGOZI NNAJI            .  Fort Worth, Texas
  EMMANUEL NNAJI         .  June 4, 2010
6  . . . . . . . . . . . . . . . .

7

              TRANSCRIPT OF PROCEEDINGS
8              (Sentencing Hearing)
        BEFORE THE HONORABLE JOHN MCBRYDE
9          UNITED STATES DISTRICT JUDGE

10

11  APPEARANCES:

12  For the Government:       MS. SUSAN L. FRENCH
                        MR. MICHAEL J. FRANK
13                     U.S. Department of Justice
                     601 D Street NW, Room 5132
14                     Washington, DC  20530
                     (214) 514-3104
15

  For Defendant N. Nnaji:   MR. REED W. PROSPERE
16                     Prospere, Russell & Dean
                     8111 Preston Road, Suite 500
17                     Dallas, Texas  75225
                     (214) 750-8555
18

  For Defendant E. Nnaji:   MS. MARLO P. CADEDDU
19                     Attorney at Law
                     3232 McKinney Avenue, Suite 700
20                     Dallas, Texas  75204
                     (214) 220-9000
21

  Court Reporter:          MS. ANA P. WARREN
22                     U.S. District Court Reporter
                     501 W. 10th Street, Room 201
23                     Fort Worth, Texas  76102-3637
                     (817) 850-6681
24

  Proceedings recorded by mechanical stenography; transcript
25  produced by computer-aided transcription.

2

### *P R O C E E D I N G S*

1
2          (Commencing, 9:30 a.m.)

3               THE COURT:  I'm next calling for sentencing Number --

4     actually, it's two defendants in this case.  It's Number

5     4:09-CR-172-A.  It's United States of America versus -- I'm

6     having a hard time pronouncing these names.  I think it's

7     Nnaji --

8               MR. PROSPERE:  Ngozi Nnaji and Emmanuel Nnaji.

9               THE COURT:  Okay.  And the other defendant is

10    Emmanuel Nnaji?

11              MS. CADEDDU:  Yes, Your Honor.

12              THE COURT:  And Ms. French and Mr. Frank are here for

13    the government.

14              MS. FRENCH:  Yes, Your Honor.

15              THE COURT:  And Mr. Prospere is here for --

16              MR. PROSPERE:  Ngozi.

17              THE COURT:  Ngozi.

18         And Mr. Westfall?

19              MS. CADEDDU:  No, You Honor.  You gave Mr. Westfall

20    permission to delegate to me today, Marlo Cadeddu, for Mr.

21    Ngozi -- Mr. Nnaji.  I'm sorry.

22              THE COURT:  Marlo Cadeddu?

23              MS. CADEDDU:  Cadeddu, Yes, Your Honor.

24              THE COURT:  Cadeddu is here for Emmanuel Nnaji.

25         Ms. Nnaji, state your name for the record.

3

1          DEFENDANT E. NNAJI:  Emmanuel Nnaji.

2          THE COURT:  State your full name for the record.

3          DEFENDANT N. NNAJI:  Ngozi Nnaji.

4          THE COURT:  And, Mr. Nnaji, state your full name for

5     the record.

6          DEFENDANT E. NNAJI:  Emmanuel Nnaji.

7          THE COURT:  Okay.  I might combine the hearing in one

8     area because, apparently, there is a common issue that we

9     might deal with at the same time, but before we get to that --

10    this is directed to Ms. Nnaji.

11        You appeared before me for a jury trial -- well, both of

12    you did.  This is directed to both of you.

13        Both of you appeared before me for a jury trial that

14    started on February 1 of 2010.  On February 2, 2010, the jury

15    returned a verdict finding each of you guilty of Counts 1, 2,

16    3, 4, and 5 of the indictment.  Those counts -- Count 1

17    charged both of you with forced labor conspiracy.  That's

18    Count 1.  Count 2 charged both of you with forced labor and

19    attempted force labor.  Count 3 charged each of you with

20    harboring domestic worker for financial gain.  Count 4 charged

21    each of you with conspiracy to harbor for financial gain.  And

22    Count 5 charged each of you with document servitude and aiding

23    and abetting

24        Now, in addition to those counts, the jury found Ms. Nnaji

25    guilty of Count 6 of the indictment, which charged false

4

1    statement to federal agents, and the jury found Defendant --

2    Mr. Nnaji guilty of the offense charged by Count 7 of the

3    indictment, false statements to a federal agent.  Of course,

4    we're here today for sentencing based on the convictions

5    resulting from the verdict of the jury.

6        Mr. Prospere, did you and your client receive in a timely

7    manner the presentence report and the addendum to it?

8            MR. PROSPERE:  Yes, Judge.

9            THE COURT:  And did both of you read those items and

10   then discuss them with each other?

11           MR. PROSPERE:  Yes, sir.

12           THE COURT:  Okay.  There was one objection to the

13   presentence report made by your client that had to do with the

14   two-level enhancement for obstruction of justice.

15       You've seen the government's response to that objection

16   and you've seen the probation officer's response, and you've

17   also seen my order that I tentatively concluded that it's

18   without merit.  Do you still wish to pursue that objection on

19   behalf of your client?

20           MR. PROSPERE:  Judge, we would.  We understand that

21   your tentative position is --

22           THE COURT:  Well, that's fine.  If you want to pursue

23   it, you certainly have a right to.

24       Now, you have also seen that I have a concern that,

25   perhaps, your client should receive a two-level increase.

5

1    It's 2A3.1(B)(4)(b), based on the fact that the victim

2    received serious bodily injury.  The probation officer didn't

3    give that increase, and I've discussed that with the probation

4    officer, and the probation officer was uncertain as to whether

5    the record would support a finding that your client should

6    have foreseen that, which I gather to be relevant conduct,

7    that it would have to be something -- apparently, there was no

8    question that the events occurred, the sexual assaults

9    occurred, and there is no question that it was related to the

10   offenses of conviction, but I gather to be relevant conduct

11   that would be chargeable against your client.  It would have

12   to be something that she could have reasonably foreseen would

13   happen or knew was happening.

14       It occurred to me, in fact, that she should have foreseen

15   it.  It's happening right there in the house.  At least some

16   of the sexual harassment is happening right there in the

17   house.  I'm not sure -- some serious things were happening

18   right there in the house where your client was situated,

19   Mr. Prospere.

20       Let me ask the government's attorney what they think.

21   They didn't object to the presentence report because of the

22   failure of the probation officer to give that two-level

23   increase.  So maybe the government agrees that it shouldn't be

24   given.  What is the government's position, Ms. French?

25            MS. FRENCH:  Judge, the government didn't disagree.

6

1    I think the evidence at trial was the victim testified on

2    direct that there was an incident when Emmanuel Nnaji came

3    into her bedroom at night when she had the children in bed

4    with her, and he groped and fondled her, and she cried out,

5    and it drew the attention of the female defendant, Ngozi.  I

6    don't know if this was part of the testimony at trial, but it

7    was in the 302s that were supplied to probation, that she was

8    made to apologize the next day to Ngozi for waking her up that

9    night.

10       I think, in addition, the evidence is that the -- Ngozi

11   and Emmanuel Nnaji worked different shifts and that there was

12   a second incident that she testified -- and I say that because

13   she was aware that Emmanuel was alone with Cecilia, the

14   victim, for extended periods of time.

15       I also don't know if this was actually part of the

16   testimony, but I know it's in the FBI reports of interview,

17   that at the time the Nnaji's moved to the second house, that

18   Emmanuel Nnaji had all of the locks -- had locks put on all

19   the bedroom doors except the bedroom where Cecilia slept with

20   the children, and in the 302, the report of interview, says

21   that his statement to the victim was that he wanted easy

22   access to her children, but, in fact, she begged him to put

23   the lock on the door so she could protect herself.

24       Even if there wasn't direct evidence at trial that Ngozi

25   Nnaji knew that the rapes were occurring, she could certainly

1  infer from the conduct of him coming in her bedroom at

2  nighttime and fondling her, and, in fact, the only room that

3  did not have a lock on the door was Cecilia's.

4      There was a further incident after Michael was born that

5  she testified about at trial when Emmanuel took Cecilia to buy

6  a goat to cook as a celebration dinner --

7          THE COURT:  I remember the details of that.

8          MS. FRENCH:  Right.  And they came back late, and

9  there was, apparently, an incident, and, apparently, Emmanuel

10  did not very well explain the extended absence.  The victim

11  explained what happened during that time.

12          THE COURT:  Well, I think the issue is, can the Court

13  find from a preponderance of the evidence based on the facts

14  you've related, some of which are not related in the

15  presentence report, that she reasonably should have known.  I

16  think -- let me see.

17          MS. FRENCH:  I believe the evidence that is before

18  the Court from the trial that was before the jury is the

19  testimony of the victim about the incident at nighttime when

20  Emmanuel came into her room and fondled her, and she screamed

21  out and drew the attention of Ngozi.  That is what I think the

22  evidence is before the Court.

23          THE COURT:  Well, are you telling me that the

24  government thinks that the evidence would support the

25  inference that she knew or should have known that the --

1        MS. FRENCH:  I think the evidence --

2        THE COURT:  -- attacks were going to occur?

3        MS. FRENCH:  Yes.

4        THE COURT:  Okay.  Let me hear from you,

5   Mr. Prospere.

6        MR. PROSPERE:  Judge, there is a statement in the

7   302 -- and Ms. Baker is here to speak to this -- that

8   indicates that there was no evidence that Ngozi Nnaji ever had

9   any knowledge of these sexual activities between Emmanuel and

10  Cecilia.

11       THE COURT:  Well, it's more than just knowledge.

12  It's -- should she have foreseen?

13       MR. PROSPERE:  Well, I don't think that she should --

14       THE COURT:  Let me see what you're talking about.  Do

15  you happen to have that?

16       MR. PROSPERE:  I do not have that copy.

17       THE COURT:  Do you happen to have one, Ms. French?

18  He says there was one that says that she had no knowledge of

19  any of the sexual --

20       MS. FRENCH:  No, sir.  I don't know if that is in

21  reference to her own statement to the FBI agent.

22     Is that what you're referring to?

23       MR. PROSPERE:  No.  It's a statement contained within

24  the 302s, the FBI's conclusion about -- at least what I

25  interpret it being the FBI's conclusion after looking into

1    these allegations in the matter of the sexual --

2         THE COURT:  I haven't seen that.  I'm not sure I've

3    seen all the 302s.

4         MS. FRENCH:  Judge, with all due respect, I don't

5    recall that in the 302, and I just directed my attention to

6    the FBI agent who is giving me a negative nod.  It does not

7    sound to me like something Special Agent Jennifer Baker would

8    ever speculate about or draw raw conclusions about.

9         THE COURT:  I've never seen a 302 where it had those

10   kinds of statements.  They report or they remark on without

11   reaching conclusions --

12        MS. FRENCH:  Yes, sir.

13        THE COURT:  -- normally is what I see.  And I think

14   they prepare reports to give the prosecutor their expressed

15   thoughts as to what the evidence establishes from that

16   perspective, but I don't suppose you don't show that to

17   Mr. Prospere, do you?

18     Ms. French, does he get the reports, the prosecutor gives

19   the assistant prosecutor in trial preparation and

20   presentation?

21        MS. FRENCH:  I'm sorry.  I don't have any report of

22   that nature from the FBI, sir.

23        THE COURT:  Oh, I thought that the investigating

24   agency normally gave the prosecutor such a report?

25        MS. FRENCH:  No.  We receive all of the 302s, all of

1    the reports, from the FBI for all of the interviews and all of

2    the investigation.  All those, a hundred percent of them, have

3    been given to defense counsel, and I have --

4              THE COURT:  And you're telling me there is no report

5    where an FBI agent has reached a conclusion --

6              MS. FRENCH:  No, sir.  No, sir.

7              THE COURT:  You're going to have to let me me talk

8    and then you talk.

9              MS. FRENCH:  Sorry.

10             THE COURT:  We have to talk one at a time.

11             MS. FRENCH:  Sure.

12             THE COURT:  Because the court reporter hasn't yet

13   learned to take this down both at the same time.

14        You're telling me there is no report where the FBI agent

15   reaches a conclusion that the defendant didn't know anything

16   about the sexual activity between her husband and the victim?

17             MS. FRENCH:  I'm saying to the Court that I have

18   absolutely no recollection of that sentence as described by

19   Mr. Prospere in any report.

20             THE COURT:  You're not going to answer my question?

21   Do you want to restate the question and answer your question?

22             MS. FRENCH:  No.  I don't recall that sentence in any

23   report, sir.

24             THE COURT:  Okay.  And is the FBI agent here where

25   you can make an inquiry?

1          MS. FRENCH:  Yes, sir.

2          THE COURT:  What is your name?  You were identified

3    during the trial.  What is your name?

4          MS. BAKER:  Jennifer Baker.

5          THE COURT:  Okay.  You heard what Mr. Prospere said

6    about one of your reports.

7       Are you talking about one of her reports?

8          MR. PROSPERE:  Judge, I believe it is.  I believe it

9    is.  There were two agents.  She took over, I think I'm

10   correct, from another agent, but my clear recollection is that

11   there is a statement in the 302s to the effect that my client

12   had no knowledge of the sexual activities on the part of her

13   husband.  Now, whether she wrote the 302 or it was a 302 that

14   was written that she adopted subsequently, I don't know.

15         THE COURT:  Are you aware of any such statement in

16   any of the 302s?

17         MS. BAKER:  There is no such statement, but I believe

18   what he may be thinking of is I made an agent note, which was,

19   when I asked her, if I recall, had she been aware of any -- I

20   don't know how I put the question, but had she been aware of

21   Emmanuel mistreating Cecilia, and at that point she broke down

22   and started crying and gave me the comments that I have the

23   best husband in the world.  All my co-workers say he's such a

24   great husband, and I made the note at this point in the

25   interview Ngozi Nnaji began to cry and gave the explanation

1    that her husband is a great husband.  That may be what he's

2    thinking about.

3         THE COURT:  Is that the closest you can think of

4    that's in any of the 302s?

5         MS. BAKER:  Correct.

6         THE COURT:  That it would be something he might have

7    in mind?

8         MS. BAKER:  Yes, because in the 302s, I do not make

9    personal opinions.  If there is an observation, I include that

10   as an agent note, and I made the observation, but it's not a

11   personal opinion, sir.

12        THE COURT:  Well, it's a close question.

13     I'll tell you what.  Since it's not in the presentence

14   report, and, apparently, some of the information I've had to

15   rely on, if I found from a preponderance of the evidence that

16   she should have known about it or did know about it, is not

17   recited in the presentence report.

18     I think you told me about things, Ms. French, that are in

19   those 302s that aren't in the presentence report.  Am I

20   correct?

21        MS. FRENCH:  That is correct, sir, yes.

22        THE COURT:  And I don't think I can make findings at

23   this time without Mr. Prospere having advance notice of what

24   I'm relying on or his client having advanced notice.  So I'm

25   not going to have that increase based on the sexual conduct.

1    So you can take that out of consideration.

2              MR. PROSPERE:  Yes, sir.

3              THE COURT:  Though, I really think it probably should

4    be given, but I'm not.

5         Okay.  So let me go to -- I think both defendants have

6    objected to the two-level increase based on obstruction of

7    justice.  So we're going to deal with that together.

8         So why don't you step aside just a minute, Mr. Prospere,

9    with your client, and I'll have Mr. Nnaji come to the

10   microphone with his attorney, and I'll ask him a few questions

11   before we get to him and that objection.

12        Mr. Nnaji, you appeared before me -- well, I've already

13   gone through this about what the jury found you guilty of and

14   that we're here today for sentencing based on those things.

15        Ms. Cadeddu, did you and your client receive in a timely

16   manner the presentence report and the addenda to it?

17             MS. CADEDDU:  Yes, Your Honor, we did.

18             THE COURT:  And did both of you read those items and

19   then discuss them with each other?

20             MS. CADEDDU:  Yes, sir, we did.

21             THE COURT:  I'm assuming that you were the one

22   involved in doing those things.  Is that a safe assumption?

23             MS. CADEDDU:  Yes, Your Honor, that is correct.

24   Mr. Westfall was also involved, but, yes, I was.

25             THE COURT:  Okay.  There was some presentence -- some

1    objections made.  Have you seen the order where I have

2    expressed my tentative -- well, you have seen the government's

3    response to the objections and then the probation officer's

4    response to objections and my order saying -- expressing my

5    tentative conclusion that they are without merit?

6            MS. CADEDDU:  Yes, Your Honor, I have.

7            THE COURT:  Do you still wish to urge all of those

8    objections or some of them or what?

9            MS. CADEDDU:  Well, Your Honor, actually, I believe

10   that we made three objections, two of which have been accepted

11   by probation already.

12           THE COURT:  Okay.  And the third one is the two-level

13   increase?

14           MS. CADEDDU:  Yes, sir, that's correct.

15           THE COURT:  So that ends up being the only objection

16   that either defendant has at this time?

17           MS. CADEDDU:  That's correct, Your Honor.

18           THE COURT:  Okay.  Do you want to offer any evidence

19   in support of your client's objection to the two-level

20   increase?

21           MS. CADEDDU:  No, Your Honor.  I have argument.

22           THE COURT:  Mr. Prospere, do you want to offer any

23   evidence in support of your client's objection to the

24   two-level increase?

25           MR. PROSPERE:  Judge, the only evidence we would

1   offer is attached to the objection itself, which is the

2   e-mailed fax, I think, that was sent in response to the

3   government's making us aware of the fact that this was at

4   issue.  It's attached to the objection that was filed in

5   regards to this matter.

6          MS. CADEDDU:  Yes, sir.  I would concur, Your Honor,

7   with that, Your Honor.  I have no additional evidence in

8   addition to that.

9          THE COURT:  Let me see what you're talking about.

10         By the way, I notice that one of the documents -- I think

11  it was in Mr. Nnaji's case -- referred to the people who

12  contacted the victim's family as his relatives or his

13  brothers, and I think it's clear that they were hers.  Does

14  everybody agree with that?

15         MS. CADEDDU:  Thank you, Your Honor, yes.

16         THE COURT:  Well, for some reason or other, I can't

17  find the --

18         MS. CADEDDU:  Your Honor, I believe the e-mail is

19  attached to -- I know it's attached to Mr. Nnaji's objections

20  to the presentence report.

21         THE COURT:  Okay.  I'm looking at hers.  Let's see.

22         Are you talking about Exhibit A to your objections,

23  Mr. Prospere?

24         MR. PROSPERE:  Sir, I'm sorry?

25         THE COURT:  Are you talking about Exhibit A to your

16

1    objections?

2            MR. PROSPERE:  Yes, sir.

3            THE COURT:  Is that the e-mail you're talking about,

4    the fax or whatever?

5            MR. PROSPERE:  Yes, sir.

6            THE COURT:  It says, "Dear Fidelis (phonetic), this

7    is my e-mail address -- and it gives an e-mail address -- for

8    fax messages --

9            MR. PROSPERE:  It actually would be the next page, is

10   the e-mail that we sent.

11           THE COURT:  Okay.  The next page is what your client

12   sent to her sister?

13           MR. PROSPERE:  To her brother.

14           THE COURT:  To her brother.

15      (Brief pause in proceedings)

16           THE COURT:  Let me ask you this, Ms. French.  What do

17   you think there is in the presentence report factually that

18   would support a finding that either of these defendants knew

19   that the threatening conduct was being engaged in?

20           MS. FRENCH:  I guess Page 11, sir.  I'm now looking

21   at the presentence report, Pages 11 and 12.

22           THE COURT:  Pages 11 and 12?

23           MS. FRENCH:  There is a brief factual recitation, and

24   then in the addendum --

25           THE COURT:  Well, all I recall seeing was that

U.S. DISTRICT COURT

1    members of her family contacted members of the victim's

2    family --

3              MS. FRENCH:  That's correct.

4              THE COURT:  I don't have any knowledge of anything

5    that now occurs to me that either of these defendants knew

6    that was going on or encouraged it to go on.  Do you have some

7    knowledge?

8              MS. FRENCH:  I think that the testimony at trial

9    first directed specifically to threats was presented by Gladys

10   Nwokonkwo, who is the daughter of the victim.  She testified

11   about a visit from the brother of the female defendant and,

12   also, his sister.  So there was direct testimony at trial

13   about attempting to locate the --

14             THE COURT:  I'll assume that the people in Nigeria

15   did those things?

16             MS. FRENCH:  Right.

17             THE COURT:  The issue is whether these defendants

18   encouraged them to do it or if he even knew they were doing

19   it?

20             MS. FRENCH:  I don't think there is any direct

21   evidence, Your Honor.  I think, however, the nature of the

22   conspiracy from the beginning to the end show that the male

23   defendant was an integral part of the plan or scheme.  It was

24   the male defendant who was involved with the female

25   defendant's family in Nigeria to initiate the recruitment, to

1   create false documents, and that the female defendant's family

2   members were the conduit in Nigeria for both the male and

3   female defendant throughout the eight-year scheme.  That was

4   how it worked.  In other words, when there were communications

5   with the victim's family in Nigeria, it always involved the

6   female defendant.  So I think it's reasonably foreseeable that

7   the male defendant knew what was going on in Nigeria.

8       The only people that interest was served whatsoever by the

9   intimidation of trying to keep this information from becoming

10  public were, in fact, both defendants and that it had been

11  part of the scheme for eight years that he felt defendant's

12  families were -- family members of Nigeria were communicators

13  to the victim's family members.

14          THE COURT:  Okay.  Mr. Prospere, did you want to make

15  some statement on this subject?

16          MR. PROSPERE:  Well, Judge, again, I think the

17  Court's question directing her to try to supply an answer as

18  to whether or not there was any direct evidence that could

19  impute knowledge to either of these people is appropriate.  I

20  listened to her talk for several minutes, and the one word

21  answer to your question would have been, no, there is no

22  direct evidence.  It's just assumption.

23          THE COURT:  Well, I asked if there's any evidence

24  from which it can be inferred, which may not necessarily be

25  direct evidence.  It may be circumstantial evidence.

1          MR. PROSPERE:  I don't think there's any

2     circumstantial evidence in which it could be inferred, and I

3     think we were put on notice that this could be -- was an issue

4     as far as the government was concerned, and I think the date

5     this e-mail was sent is January '06.  So if it had been going

6     on earlier than that, certainly, we were not made aware of it.

7     When we were made aware of it, we sent the e-mail and tried to

8     make contact as quickly as we could.  And, you know, things

9     that go on over there culturally, we try to explain to them

10    aren't acceptable over here, and we tried to communicate that

11    in language a four-year-old should understand, and that's what

12    we tried to do.  That's all they could do at that point in

13    time.

14          THE COURT:  Okay.  Ms. Cadeddu?

15          MS. CADEDDU:  Yes, Your Honor.  I would adopt

16    Mr. Prospere's argument, but I would also add that in this

17    case, with respect to Mr. Nnaji, we're even one iteration

18    further removed.  So it's Ngozi Nnaji's relatives who are

19    making these threats.  There isn't any direct evidence.  There

20    is not even any circumstantial evidence that the government

21    could point to to show even Mrs. Nnaji's knowledge of that,

22    and there is certainly no evidence whatsoever that could take

23    that out, another iteration, to show that Mr. Emmanuel

24    Nnaji directed, induced, and procured that conduct.

25       I would add that the government makes what sounds like a

1    conspiracy argument, and I think that was in the response to

2    the objection, but -- so that the defendants were somehow

3    responsible on a conspiracy theory for the conduct of Francis

4    -- I cannot say the name, the brother of -- Mrs. Nnaji's

5    brother in Nigeria.  The problem with that theory is that the

6    conspiracy was alleged to have been completed.  The

7    allegations in the indictment are that it was over in February

8    of 2006, and all of these alleged threats -- I mean, I'm

9    assuming that the threats occurred like Your Honor is -- these

10   threats occurred all after the end of the conspiracy date

11   charged in the indictment.

12       So they can't be held accountable for a conspiracy theory

13   because they were occurring outside the scope of the

14   conspiracy, and there just isn't any direct or circumstantial

15   evidence that would allow the Court to infer or impute

16   knowledge that that was going on.

17          THE COURT:  Do you have anything else you want to

18   say, Ms. French?

19          MS. FRENCH:  Yes.  I would request that the Court

20   adopt the factual statements in the government's response to

21   both Defendant Ngozi Nnaji's objections to the presentence

22   report as well as Emmanuel's that we filed, which set forth

23   the facts according to the obstruction count, and just to

24   highlight that the threats began the days of the victim

25   escaping back in February 2006.

1        The only inference that can be drawn is that the threats

2    were directly set in motion by the defendants, Judge, and they

3    continued through -- and this is relevant conduct to the

4    offense -- they continued through close to trial, and some of

5    the recurring threats that are set forth in here involved

6    reaching out to the Roman Catholic priest, who was the

7    rescuer, attempting to intimidate him from coming to court

8    directly before trial, and he has, the Court recalls,

9    testified.  So there's --

10            THE COURT:  Where are you looking now?

11            MS. FRENCH:  I am on the government's response to

12    Defendant Ngozi Nnaji's objections to the presentence report.

13    We filed a very similar response to Emmanuel Nnaji's

14    objections, and we set forth --

15            THE COURT:  Let me find what you're talking about.

16            MS. FRENCH:  Certainly.

17        (Brief pause in proceedings)

18            THE COURT:  Well, I'm afraid I can't find from a

19    preponderance of the evidence that these defendants knew those

20    threats were going to be made or did anything to encourage

21    them to be made.  I think an equal possibility -- you can

22    equally infer that the members of the family and the family of

23    Mrs. Nnaji simply took it upon themselves to try to discourage

24    people from doing the things that were to the disadvantage of

25    the defendant.  So I'm going to sustain those objections.  So

1    I'll need some recalculations on that.

2         I take it I've dealt with all the objections that

3    Ms. Nnaji has?

4              MR. PROSPERE:  Yes, Judge.

5              THE COURT:  And I have dealt with all the objections

6    that Mr. Nnaji has?

7              MS. CADEDDU:  Yes, Your Honor.

8              THE COURT:  Okay.  There being no further objections

9    to the presentence report as to either defendant, the Court

10   adopts as the fact findings of the Court as to each of the

11   defendants the facts set forth in the presentence report as to

12   that defendant as modified or supplemented by any addendum to

13   the presentence report, any facts stated in the addendum, and

14   any facts I found from the bench.

15        And the Court adopts as the conclusions of the Court --

16   the conclusions as to each defendant the conclusions set forth

17   in that defendant's presentence report as modified or

18   supplemented by any addendum as to that defendant and any

19   facts I found from the bench as to that defendant.

20        (Brief pause in proceedings)

21             THE COURT:  The Court concludes as to Ms. Nnaji as to

22   the advisory guideline information that the Total Offense

23   Level is 29; that the Criminal History Category is I; that the

24   imprisonment range as to Count 1 is 60 months, which is the

25   maximum -- statutory maximum; that the imprisonment range as

1    to Count 2 is 87 to 108 months; that the imprisonment range as

2    to Count 3 is 87 to 108 months; that the imprisonment range as

3    to Count 4 is 87 to 108 months; and that the imprisonment

4    range as to Count 5 is 60, which is the statutory maximum.

5    And the imprisonment range as to Count 6 is 60; that the

6    supervised release range is two to three years as to each

7    count; and that the fine range is $12,500 to $1,500,000, and

8    that a special assessment of $600 -- that is $100 per count

9    per conviction -- is mandatory.

10       As to Defendant Emmanuel Nnaji, Mr. Nnaji, the Court

11   finds -- or concludes that the total offense level is 34; that

12   the Criminal History Category is I; that the imprisonment

13   range is 151 to 188 months as to Count -- no.  As to Count

14   1 -- let me back up on the imprisonment range.

15       The advisory imprisonment range as to Count 1 is 60

16   months, which is the statutory maximum as to Count 1.  The

17   advisory range as to Count 2, imprisonment range, is 151 to

18   188 months.  The advisory imprisonment range as to Count 3 is

19   120 months, which is the statutory maximum, and the advisory

20   imprisonment range as to Count 4 is 120 months, which is the

21   statutory maximum.  That the advisory imprisonment range as to

22   Count 5 is 60 months with respect to the maximum, and the

23   advisory imprisonment range as to Count 7 is 60 months, which

24   is the statutory maximum, and that the supervised release

25   range is two to three years per count.  The fine range is

1    $17,500 to $1,500,000, and that a special assessment of $600

2    is mandatory.  That is $100 per count per conviction.

3        Okay.  Mr. Prospere, I'm going to let you -- well, we'll

4    start with Ms. Cadeddu.  You can make whatever statement you

5    would like to make -- we'll come back to you, Mr. Prospere.

6    We're going to start with Ms. Cadeddu.

7            MS. CADEDDU:  Okay.  Thank you, Your Honor.

8        Your Honor, on behalf of Mr. Nnaji, we filed a sentencing

9    memorandum in this case to give the Court a little more

10   insight into --

11           THE COURT:  I've read that.  Thank you for submitting

12   that.

13           MS. CADEDDU:  Thank you, sir.

14       I think in this case the two most important factors,

15   nonguideline-related factors, are Mr. Nnaji's lack of any

16   criminal history and, also, his work history and the type of

17   work he did.  And I think that the Court can and should

18   consider Emmanuel Nnaji's work with terminally and chronically

19   ill patients, and the fact that he had a career change in

20   order to be able to assist those folks.

21       The impetus for the career change for Mr. Nnaji was the

22   fact that there's a number of family members suffering from

23   chronic disease, including the deaths from diabetes-related

24   complications of his mother and two sisters, as well as the

25   drawn out illness of his late wife and the mother of his two

1  oldest children.

2      I received, actually, yesterday -- and I apologize for

3  this, Your Honor.  It came to my office yesterday, but it's a

4  letter confirming Mr. Nnaji's employment with the Kind Heart

5  Home Health System, and I would like to read that into the

6  record for the Court because I think it gives some indication

7  of the type of work he did.

8      Your Honor, my name is Ekwutosi Akintoye.  I have lived in

9  the Dallas area for ten years with my family.  I have had the

10 pleasure of knowing and working with Mr. Nnaji the past two

11 years.  During the years of our acquaintance, I have known

12 Mr. Nnaji in many capacities.  We have worked together as

13 nurses with Kind Heart Home Health.  Mr. Nnaji is a well-liked

14 nurse in our company by other employees as well as patients.

15     Mr. Nnaji has shown good compassion towards all our

16 patients, especially the ones with diabetes.  Mr. Nnaji gave

17 up a career as an engineer to go into nursing after losing

18 both his mother and sister to diabetes.  Mr. Nnaji dedicated

19 his time to doing research on diabetes to give his patients

20 options on ways to live and cope with the disease.

21     Mr. Nnaji is a good, compassionate, intelligent, and

22 personable man.  He's always prepared for his job and shows

23 great compassion towards his career and his patients.  He's

24 always quick on his feet with sensible reactions to sometimes

25 difficult situations that I've seen him in.

26

1        And that is signed by Ms. Akintoye.

2        I think, Your Honor, that the charges in this case,

3    although very serious, are not the complete measure of a man.

4    Mr. Nnaji did work and did do good work with terminally and

5    chronically ill people, and that work really did change the

6    lives of those people.  He did a lot of good for very, very

7    sick patients, and I would ask that the Court consider that in

8    sentencing him.

9        And other than my client's allocution, Your Honor, I

10   believe that's going to be my presentation.

11            THE COURT:  Okay.  Mr. Nnaji, you have the right to

12   make any statement or presentation you would like to make on

13   the subject of mitigation, that is, the things you think the

14   Court should take into account in determining what sentence to

15   impose or on the subject of sentencing more generally.

16            MS. CADEDDU:  Your Honor?

17            THE COURT:  Yes.

18            MS. CADEDDU:  I apologize, Your Honor, but

19   Mr. Nnaji's accent is a little difficult.  So he has his

20   statement prepared, and with the Court's permission, I would

21   like to give you a written copy of that so that you can follow

22   along.

23            THE COURT:  Okay.  Let me finish what I was saying.

24            MS. CADEDDU:  I'm sorry, sir.

25            THE COURT:  Mr. Nnaji, you have the right to make any

1  statement or presentation you would like to make on the

2  subject of mitigation, that is, the things you think the Court

3  should take into account in determining what sentence to

4  impose or on the subject of sentencing more generally, and at

5  this time, I'm going to invite you to do that.

6  And as I understand it -- tell me what it is -- how does

7  Mr. Nnaji wish to make his statement?

8  MS. CADEDDU:  He will read the statement, Your Honor,

9  that he has prepared, but because his accent is a little

10  difficult to follow, we've prepared a typewritten copy.

11  THE COURT:  Okay.  Give the court reporter a copy of

12  it.

13  MS. CADEDDU:  Thank you, Your Honor.

14  And would the Court also like a copy of the letter I read

15  into the record, or is that not necessary?

16  THE COURT:  That probably would be a good idea to

17  give me a copy of it.

18  MS. CADEDDU:  Thank you, sir.

19  THE WITNESS:  Okay.  You may proceed, Mr. Nnaji.

20  DEFENDANT E. NNAJI:  Thank you, Your Honor.

21  Dear Honorable Judge McBryde:  My court date is today, and

22  I stand in the shadow of your justice and beg for your mercy

23  and leniency.  This is my first ever offense, and I promise it

24  will be my very last.  Please be merciful and lenient for

25  God's sake and for my children's sake.

1    To begin with, my name is Emmanuel Nnaji, and I'm 50 years

2    old.  I was born and nurtured by my mother, Comfort Nnaji, who

3    died in 2002 of diabetes complication, multiple strokes.  She

4    was 61 years old.  My mother was separated from my father when

5    I was only four months old, and my father died four years

6    later of heart attack at the age of 55 years old.  I am the

7    only male and the last born of two children.

8    My two sisters, Theresa and Lucy, both died the same year

9    in 1998 due to diabetes-related complications.  My only

10   remaining sister, Christine, sponsored me to U.S. and paid all

11   my educational expenses, which resulted to bachelor of science

12   in industrial engineering.

13   Currently, my sister, Christine, is dying from years of

14   battling diabetes with neuropathy in both lower extremities.

15   I am the only remaining healthy one of the family.  I'm also

16   diabetic, diagnosed since 1997, managed with Metformin,

17   Glimepiride, and insulin.

18   My mother raised me as a Christian with a high moral

19   standard, respectful to others, and to cherish Bible and

20   education as my way out in life.  I followed her advice.

21   Besides my degree in industrial engineering, I am also a

22   graduate of Texas Women's University with bachelor of science

23   in nursing with a business degree, both three points average.

24   Your Honor, I went into nursing career for one main purpose,

25   that is, to help and rescue the sick and suffering.

1      My first wife, Theresa Nnaji, died of Lupus in 1999.

2   Watching her life slipping away as I daily took care of her,

3   including taking her to dialysis centers thrice weekly

4   inspired me to go into a profession that will enable to help

5   others in similar conditions.  I am glad I did because I have

6   put many smiles on many of my seriously ill patients and

7   families.

8      Once again, Noble Judge, I stand at the shadow of your

9   justice.  Noble Judge, you are my only hope.  Whatever

10   sentence you pronounce today is a just punishment, but please

11   be merciful and please be lenient.  Thank you.

12      THE COURT:  Okay.  I believe I indicated in my order

13   of a few days ago that I tentatively concluded that a sentence

14   above the top of the guideline range would be appropriate in

15   this case as to this defendant, and I'm still -- maybe more so

16   than ever -- that if it be a sentence within the guideline

17   range as to this defendant, it would not be -- as to

18   imprisonment, it would not be a large enough sentence to

19   adequately address the defendant's behavior, criminal

20   behavior.

21      As reflected by Paragraphs -- I think it's 131 and 132 of

22   the addendum to the presentence report and, also, in the body,

23   the defendant assaulted or raped the victim on at least two

24   different occasions, but only one of those assaults was used

25   to determine the advisory guideline computations.  Had both of

1    them been considered, the combined advisory guideline level

2    would have been higher, and the guideline range would have

3    been significantly higher than it is now.

4        Based on the information the Court has, the Court finds

5    that a sentence outside the advisory guideline range would be

6    a reasonable sentence in this case and would reflect the

7    nature and circumstances of the offense and the history and

8    characteristics of the defendant and would adequately address

9    the need to reflect the seriousness of the defendant's

10   offenses and to promote respect for the law and to provide

11   just punishment for the offenses.  All is contemplated by 18,

12   United States Code, Section 3553(a).

13       I've decided that a sentence of -- a combined sentence as

14   to all of the counts of 240 months would be a sentence that

15   would be a reasonable sentence that will take into account all

16   the factors the Court should consider that would be divided

17   amongst the different counts that would seem best to define

18   them.

19       (Brief pause in proceedings)

20           THE COURT:  Okay.  I think we've figured out how to

21   achieve what I think to be a reasonable sentence in this case.

22   The Court orders and adjudges that the defendant be committed

23   to the custody of the Bureau of Prisons to serve a term of

24   imprisonment of 60 months as to Count 1 of the indictment --

25   okay, 60 months as to Count 1 of the indictment; 240 months as

1    to Count 2 of the indictment; 60 months as to Count 3 of the

2    indictment; 60 months as to Count 4 of the indictment.

3        Let me back up.  60 months as to Count 1; 240 months as to

4    Count 2; 120 months each as to Counts 3 and 4; and 60 months

5    each as to Counts 5 and 6, all to run concurrently for an

6    aggregate sentence of 240 months.  So that's the sentence I'm

7    imposing as the sentence of imprisonment.

8        Now, in addition, the Court is ordering that the defendant

9    have the forfeiture that is applicable --

10            MS. FRENCH:  Judge, the forfeiture we did not proceed

11   on because the house had a net equity.

12            THE COURT:  Okay.  Well, we won't do that then.

13       The Court is ordering that the defendant make full

14   restitution jointly and severally with his wife, Ngozi, and

15   that restitution will be in the amount of $305,957.60.  Now,

16   that restitution is payable immediately, but nonpayment will

17   not be a violation of the defendant's conditions of supervised

18   release so long as he pays, and that will be provided in those

19   conditions.

20       All restitution payments shall be made by the defendant to

21   the clerk of the Court here in Fort Worth for disbursement to

22   the victims, Cecilia -- and I have a hard time pronouncing her

23   last name.  It's the victim.  We all know the name of the

24   victim.  And those payments will be sent to her at the address

25   that will be set forth in the judgment of conviction and

1   sentence.

2       I'm not ordering that the defendant pay a fine because I

3   don't have any reason to think the defendant would have the

4   resources to do that as well as make restitution.

5       I am ordering that the defendant serve a term of

6   supervised release of three years as to each of the counts of

7   conviction, 1 through 5 and 7, to run concurrently with each

8   other.  Now, the conditions of that supervised release will be

9   the standard conditions that will be set forth in the judgment

10  of conviction and sentence and the following additional

11  conditions:

12      The defendant shall not commit another federal, state, or

13  local crime.  The defendant shall not possess illegal

14  controlled substances.  The defendant shall cooperate in the

15  collection of DNA as directed by the probation officer and as

16  authorized by the Justice For All Act of 2004.

17      Now, when the defendant's term of supervised release

18  starts, any part of the restitution obligation, that is, the

19  305,957.60 remains unpaid, the defendant will make payments on

20  that unpaid balance at the rate of at least $200 a month, and

21  the first of those payments is to be made no later than 60

22  days after his release from confinement and another should be

23  made on the same day of each month thereafter until the full

24  restitution amount is paid.  Any unpaid balance of that

25  restitution ordered by the judgment shall be paid in full 60

1    days prior to the termination of the defendant's term of

2    supervised release, the conditions of the supervised release.

3        Going on with the conditions, the defendant shall refrain

4    from incurring new credit charges or opening additional lines

5    of credit without approval of the probation officer unless the

6    probation officer makes the determination that the defendant

7    is fully satisfying his restitution obligation.

8        I'm also ordering the defendant to pay a special

9    assessment of $600.  That's payable immediately to the United

10   States of America through the office of the United States

11   Clerk, that is, $100 per count of conviction.

12       Let's see.  Mr. Nnaji, you have the right to appeal from

13   the sentence I've imposed if you're dissatisfied with it.

14   That appeal would be to the United States Court of Appeals for

15   the Fifth Circuit.  You have the right to appeal in forma

16   pauperis.  That means without any cost to you if you qualify

17   for it.  You have the right to have the clerk of the Court

18   file a notice of appeal for you, and the clerk will do that

19   forthwith if you were to specifically request it.

20       You and your attorney have been given a form that outlines

21   certain rights and obligations in reference to an appeal.  If

22   you haven't already done so, I want the two of you to review

23   it to be sure you understand it, and once both of you are

24   satisfied you understand it, I want both of you to sign and

25   return it to the Court coordinator.

1      Has that been done?

2           MS. CADEDDU:  It has, Your Honor.

3           THE COURT:  Okay.  The defendant is remanded to

4      custody of --

5           MS. CADEDDU:  Your Honor?  I'm sorry, Your Honor.  If

6      I may, I have a couple of housekeeping matters.

7         I need to object for record purposes to the

8      above-guideline sentence and object to the substantive and

9      procedural reasonableness grounds.

10        And then I just wanted to ask -- Mr. Westfall asked me to

11     ask the Court -- actually, I'm raising an objection --

12          THE COURT:  I'm sorry.  I'm not understanding.  You

13     can make whatever objections you want to make.  I've made my

14     rulings.

15          MS. CADEDDU:  Okay.  Thank you, Your Honor.

16        And then I also would like to find -- I would like to ask

17     the Court on behalf of Mr. Westfall for a finding of

18     Mr. Nnaji's indigence based on the presentence report --

19          THE COURT:  Finding of what?

20          MS. CADEDDU:  Indigence, Your Honor, based on the

21     presentence report.

22          THE COURT:  I'm not going to make that finding now.

23     If he wants to qualify for that, do an appropriate motion with

24     whatever documentation is required to support that motion.

25          MS. CADEDDU:  I will convey that to Mr. Westfall.

1           THE COURT:  Okay.

2           MS. CADEDDU:  Thank you, Your Honor.

3           THE COURT:  Okay.  Now, we're going back to Defendant

4    Ngozi Nnaji --

5           MS. CADEDDU:  May I be excused, Your Honor?

6           THE COURT:  You're excused.  The defendant, your

7    client, is remanded to custody, and you're excused.

8       She is back to the microphone.  Ngozi Nnagi is back to the

9    microphone with her attorney, Mr. Prospere.

10      And, Mr. Prospere, you can make whatever statement you

11   would like to make on behalf of your client at this time.

12          MR. PROSPERE:  Judge, I would just like to ask the

13   Court in assessing the sentence that you're going to assess in

14   this case to take into account the certain collateral

15   consequences to Ms. Nnaji, one, being the loss of children,

16   and, two, is the certain deportation that will follow whatever

17   sentence the Court will impose.

18      Certainly, the impact of the convictions in this case are

19   more severe on her than, in fact, they are on her husband for

20   those reasons, and I would ask the Court to take that into

21   account in assessing her sentence.

22      Those are all the remarks I have, Your Honor.  Ms. Nnaji

23   has a statement she would like to read to the Court, and she's

24   made an additional copy that would be easier for you to follow

25   along.

36

1          THE COURT:  Okay.  If you want to hand it up, that

2     might be helpful.

3          Ms. Nnaji, you have the right to make any statement or

4     presentation you would like to make on the subject of

5     mitigation, that is, the things you think the Court should

6     take into account in determining what sentence to impose or on

7     the subject of sentencing more generally, and at this time

8     I'll invite you to do that is.

9          DEFENDANT N. NNAJI:  Your Honor and respected Judge

10    John McBryde.

11         Thank you, Your Honor, for giving me the opportunity to

12    speak before you pass down your judgment.  Please take into

13    consideration the positive events in our lives.  We have lived

14    in this country for over 23 years.  We have three beautiful

15    young children.  Our family have never, ever had any problem

16    with anybody.  Both my husband and I have lived productive

17    life in this country.

18         My husband has gone to college to be a nurse at one of

19    your finest university in Texas, and I have worked in the

20    medical field for the last 12 years at the same hospital

21    taking care of patients.

22         Your Honor, the most important things in this world are my

23    three little children, Michael, nine years old with severe

24    asthma, Precious, 10 years old with learning disability, and

25    Joy, 12 years old.  They are now living in a strange home.

1   They need their parents to be in their lives.

2       With all due respect to Your Honor, and in God we trust, I

3   respectfully request your mercy and consideration in this

4   matter.  We have learned valuable lesson.  Thank you for your

5   time.  May the joy of the Lord be your strength.  May the Lord

6   be precious to your soul, and may Angel Michael guide you

7   always.  Thank you.

8           THE COURT:  Okay.  Do you have anything else?

9           MR. PROSPERE:  No, Your Honor.

10          THE COURT:  Okay.  Well, I think in the case of

11  Ms. Nnaji, a sentence within the guideline range -- advisory

12  guideline range would be a reasonable sentence in this case.

13  I think a sentence at the top of it, though, collectively is

14  necessary for there to be a sentence adequate to address her

15  conduct and all of the factors the Court should consider under

16  18, United States Code, Section 3553(a).

17      So my plan is to impose a sentence that collectively

18  produces a sentence of imprisonment of 108 months.  Plus,

19  there will be restitution of $305,957.60 jointly and severally

20  with her husband, and I think a term of supervised release of

21  three years as to each of the Counts 1 through 6 would be

22  appropriate, and a special assessment of $600.  That is $100

23  per count of conviction.  As I indicated, I think a sentence

24  of that kind would be a reasonable sentence that would

25  adequately and appropriately address all the factors the Court

1    should consider under 18, United States Code, Section

2    3553(a).

3        So the Court orders and adjudges that the defendant be

4    committed to the custody of the Bureau of Prisons to serve a

5    term of imprisonment of 180 months as to Counts -- each of

6    Counts -- 108, 1-0-8.  I think I misspoke, 108 months -- as to

7    each of the Counts 2, 3, and 4, and to serve a term of

8    imprisonment of 60 months as to each of the Counts 1, 5, and

9    6.  All of those terms of imprisonment are to run concurrent,

10   so that the aggregate term of imprisonment is 108 months.

11       I'm also ordering that the defendant make full restitution

12   to the victim of her criminal conduct, and that will be in the

13   amount of $305,957.60.  The restitution obligation, jointly

14   and severally, with the restitution obligation of Emmanuel

15   Nnaji is payable immediately -- her restitution obligation is

16   payable immediately, but nonpayment will not be a violation of

17   her conditions of supervised release so long as she pays as

18   will be provided in those conditions.  All restitution

19   payments are to be made by the defendant to the clerk of the

20   Court here in Fort Worth for disbursement to

21   Cecilia Nwokonkwo -- I believe I finally got it fairly

22   close -- at the address that will be set forth in the judgment

23   of conviction and sentence.

24       I am not ordering the defendant to pay a fine because I

25   don't have any reason to think she has or will have the

1  resources to do that in addition to making her restitution

2  payments.

3       I'm also ordering that the defendant serve a term of

4  supervised release of three years as to each of the Counts 1

5  through 6 to run concurrent with each other.  And then

6  pursuant to 18, United States Code, Section 3582(d), as a

7  condition of supervised release, once a defendant has

8  completed her sentence of imprisonment, she shall be

9  surrendered by the Federal Bureau of Prisons to a duly

10 authorized immigration official for deportation in accordance

11 with the established procedure provided by the Immigration and

12 Nationality Act.  As a further condition of supervised

13 release, if the defendant is ordered deported, she shall

14 remain outside the United States.

15      Now, in the event the defendant is not deported

16 immediately upon release from imprisonment or should she ever

17 be within the United States during any portion of her term of

18 supervised release, she shall comply with the standard

19 conditions of supervised release that will be set forth in the

20 judgment of conviction and sentence, and she will be made

21 aware of those and shall comply with the following additional

22 conditions:

23      She shall not possess illegal controlled substances.  She

24 shall not commit another federal, state, or local crime.  She

25 shall cooperate in the collection of DNA as directed by the

1   probation officer and as authorized by the Justice For All Act

2   of 2004.

3       Now, when she starts her term of supervised release, any

4   form of that restitution obligation of $305,957.60 remains

5   unpaid, she will make payments on that unpaid amount at the

6   rate of at least $200 per month, and the first of those

7   payments is to be made no later than 60 days after her release

8   from confinement, and another is to be made on the same day of

9   each month thereafter until the full restitution amount is

10  paid.  Any unpaid balance of the restitution is to be paid as

11  a condition of supervised release.  If it's unpaid 60 days

12  prior to the termination of the terms of supervised release,

13  the full unpaid balance becomes due and payable at that time

14  as a condition of supervised release.

15      Going on with the conditions, the defendant shall refrain

16  from incurring new credit charges or opening additional lines

17  of credit without the approval of the probation officer unless

18  the probation officer makes a determination that the defendant

19  has fully satisfied her restitution obligations.  The Court

20  further orders that the defendant pay a special assessment of

21  $600, that is, $100 per count of conviction.  That's payable

22  immediately to the United States of America through the office

23  of the United States Clerk.

24      Ms. Nnaji, you have the right to appeal from your

25  conviction and the sentence I've imposed if you're

41

1    dissatisfied.  That appeal would be to the United States Court

2    of Appeals for the Fifth Circuit.  You have the right to

3    appeal in forma pauperis, and that would be without any cost

4    to you if you qualify for it.  You have the right to have the

5    clerk of the Court file a notice of appeal for you, and the

6    clerk will do that forthwith if you were to specifically

7    request it.

8        You and your attorney have been given a form that outlines

9    certain rights and obligations in reference to an appeal.  If

10   you haven't already done so, I want the two of you to review

11   it, and once both of you are satisfied you understand it, I

12   want both of you to sign it and return it to the Court

13   coordinator.

14       Has that been done?

15             MR. PROSPERE:  Yes, Judge.

16             THE COURT:  Okay.  The defendant is remanded to

17   custody, and the attorneys are excused.

18             MR. PROSPERE:  Judge, can I have one additional

19   request?  I know this isn't binding on the Bureau of Prisons,

20   but if you could make a recommendation that she be assigned as

21   close to Texas as possible, she would appreciate that.

22             THE COURT:  I don't make those recommendations.

23             MR. PROSPERE:  Thank you.

24       May I be excused, Your Honor?

25             THE COURT:  You're excused.

42

1          MR. FRANK:  Your Honor, may we be excused?

2          THE COURT:  You're excused, yes.

3       (End of proceedings, 10:40 a.m.)

4

5                         -oOo-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                      CERTIFICATE

21     I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter, and
22  that the transcript was prepared by me and under my
supervision.

23
s/  Ana P. Warren                    February 4, 2010
24  Ana P. Warren, CSR #2302                  Date
U.S. District Court Reporter
25                         -oOo-